UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Exothermics, Inc.

     v.                               Civil No. 24-cv-00290-LM
                                           Opinion No. 2025 DNH 013 P

Ernst & Young U.S. LLP &
Ernst & Young LLP


## **O R D E R**

Plaintiff Exothermics, Inc. ("Exothermics") brings this suit against defendants Ernst & Young U.S. LLP and Ernst & Young LLP ("Ernst & Young")[1] alleging that Ernst & Young wrongfully claimed ownership of a technology that Exothermics developed. Ernst & Young moves to compel arbitration under the Federal Arbitration Act pursuant to an arbitration clause contained in a contract between the parties. Doc. no. 19. Exothermics objects. Doc. no. 24. For the following reasons, Ernst & Young's motion (doc. no. 19) is granted.

## **STANDARD OF REVIEW**

District courts apply the summary judgment standard to decide motions to compel arbitration under the Federal Arbitration Act. Air-Con, Inc. v. Daikin Applied Latin America, LLC, 21 F.4th 168, 175 (1st Cir. 2021). A movant is entitled to arbitration where he shows no "genuine issue of fact exists regarding the parties'

---

[1] The court refers to Ernst & Young in the singular throughout even though there are two separate Ernst & Young entities named as defendants.

agreement to arbitrate." Id. at 175-176. In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Id. at 175.

## BACKGROUND[2]

Exothermics is a New Hampshire-based engineering and manufacturing company that specializes in vacuum-testing technologies primarily for use in the defense and aerospace industries. Ernst & Young is a global audit and consulting firm that advises clients on a wide range of matters, including manufacturing efficiency. Ernst & Young's clients include numerous distilleries that age drinks or food products in wooden barrels.

On October 20, 2020, Ernst & Young contacted Exothermics for help with a manufacturing problem it had identified for their distillery clients. Ernst & Young explained that when liquids such as scotch, bourbon, or soy sauce age in wooden barrels, a significant amount of the liquid is absorbed by the barrel. The absorbed liquid remains in the barrel when it is drained for bottling, blending or transfer. This lost liquid, according to Ernst & Young, could generate significant revenue for distilleries if it could be effectively recovered from the wood. Ernst & Young proposed that Exothermics use its vacuum technology expertise to develop a solution that would extract the absorbed liquid. Exothermics maintains that— during the October 2020 meeting—Ernst & Young proposed a partnership: if

_____

[2] The background facts are taken from Exothermics' complaint. The facts pertaining to the motion to compel arbitration are not in dispute.

Exothermics could develop the technology, Ernst & Young would market the product to its distillery clients.

Exothermics agreed to try and design such a product. Ultimately their scientists, according to the complaint, were able to conceive, develop, and build an extraction system without help from Ernst & Young. Ernst & Young provided barrels from its clients to test the product's efficacy. The tests were successful, so Exothermics built a prototype. Exothermics continued testing and refining the prototype with barrels provided by Ernst & Young's clients through 2021. Exothermics spent $625,000 to invent, develop, and test the device. Exothermics alleges they only developed the prototype upon belief that Ernst & Young would provide the necessary contacts in the distilling industry to make the effort profitable.

On December 1, 2021, Ernst & Young asked representatives from Exothermics if they would meet with patent attorneys from Ernst & Young to discuss the vacuum prototype and its design. Ernst & Young also inquired as to whether Exothermics would consider "co-inventorship" for purposes of a patent application. It is not clear from the record whether Exothermics ultimately agreed to this meeting or to co-inventorship.

On January 18, 2022, Ernst & Young filed a provisional patent application for "Systems and Methods of Liquid Extraction from Empty Barrels."[3] It filed two

---

[3] U.S. Provisional Patent Application No. 63/3000,425.

3

related patent applications later in 2022.[4] Each patent application listed Zachary Hagan (the Ernst & Young employee who had been liaising with Exothermics) as the sole inventor. Ernst & Young did not tell Exothermics about any of the patent applications prior to their filing.

On May 4, 2023, Exothermics signed a nondisclosure agreement with Ernst & Young ("NDA") to discuss their potential partnership for the development and commercialization of the liquid extraction product. The NDA included an arbitration clause, which reads in full:

> Except as provided herein, the Parties agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance, or breach of this Agreement shall be settled by arbitration to be held in the State of Delaware in accordance with the Commercial Arbitration Rules then in effect for the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. In the event of arbitration, the Parties may undertake a reasonable amount of discovery. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction.

Doc. no. 19-7 at 5. The NDA allowed Exothermics to view the patent applications filed by Ernst & Young relating to the development and commercialization of a liquid extraction product. After reviewing the Ernst & Young patent applications, Exothermics came to believe Ernst & Young wrongfully claimed ownership of the vacuum-extraction system Exothermics had developed.

---

[4] U.S. Patent Application No. 18/155,308 and PCT Application No. PCT/US23/60739.

4

Exothermics filed the instant action on September 16, 2024, seeking injunctive relief correcting inventorship and reassigning ownership of the patent applications as well as damages.[5] Ernst & Young now moves to compel arbitration of Exothermics' claims pursuant to the arbitration clause in the NDA.

## DISCUSSION

To compel arbitration the movant must show: (1) the existence of a valid arbitration clause; (2) that they may invoke the clause; (3) that the other party is bound by the clause; and (4) that the claims brought are within the scope of the clause. Bossé v. N.Y. Life Ins. Co., 992 F.3d 20, 27 (1st Cir. 2021). Courts must "rigorously enforce" arbitration agreements according to their terms. Bossé, 992 F.3d at 27 (quoting Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013)).

In this case, the parties' dispute centers around prong four: whether Exothermics' claims fall within the scope of the arbitration clause. Exothermics argues that the motion to compel should be denied because the dispute does not arise out of or relate to the NDA. However, the parties' dispute has an additional layer: Ernst & Young argues that the question of whether these claims fall within the scope of the arbitration clause must itself be decided by the arbitrator.

---

[5] Specifically, Exothermics brings four claims against Ernst & Young: correction of inventorship as to all three disputed patents and patent applications (Count I); unjust enrichment (Count II); violation of New Hampshire's Consumer Protection Act for their promise of future benefits from a joint venture (Count III); negligent misrepresentation for their promise of a joint venture that led Exothermics to develop a vacuum-extraction system (Count IV).

A district court has no power to determine threshold questions of arbitrability, including questions of scope under prong four, where the parties' arbitration agreement delegates such questions to the arbitrator. See Henry Schein, Inc. v. Archer and White Sales, Inc., 586 U.S. 63, 67-68 (2019); Biller v. S-H OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 509 (1st Cir. 2020). This is true even where the argument made in favor of arbitrability appears "wholly groundless." Henry Schein, 586 U.S. at 68.

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Henry Schein, 586 U.S. at 69; Bossé, 992 F.3d at 27. But where there is such "clear and unmistakable" intent, the court must send questions of arbitrability to the arbitrator. Bosse, 992 F.3d at 28.

Here, it is unmistakably clear that the parties intended to delegate questions of arbitrability to the arbitrator. The arbitration clause states that all disputes are governed by the rules of the American Arbitration Association's Commercial Arbitration Rules, and those rules contain a delegation clause.[6] And the First Circuit holds that mere "incorporation of the [American Arbitration Association's]

---

[6] Here, the relevant rule contains the following delegation clause: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a) (2022).

arbitration rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability." Bossé, 992 F.3d at 29.

Because the arbitration clause contains a valid delegation clause, the arbitrator must decide any questions of arbitrability. Id. at 28. Thus, the arbitrator will decide whether Exothermics is correct that — because this lawsuit has nothing to do with the NDA — it should not be subject to arbitration. Each argument Exothermics makes in its effort to stave off arbitration invokes the question of whether this case is arbitrable, and each must ultimately be decided by an arbitrator.

Exothermics first argues that the arbitration clause cannot apply because the contract in which it appears (the NDA) has been terminated. However, the First Circuit holds that whether an arbitration clause within a contract survives the contract's termination is itself a question of scope. See Biller, 961 F.3d at 512-13 (finding that the court could determine whether the arbitration clause survived termination of the contract only because the parties had not delegated arbitrability to the arbitrator). Exothermics must therefore put this question to the arbitrator.

Exothermics also argues that the NDA (and therefore the arbitration clause) does not apply to any of the claims presented in the complaint. Again, this is a question of scope that must be decided by the arbitrator. See Bossé, 992 F.3d at 28 (classifying the question of whether the arbitration agreement and delegation clause apply to particular claims as one of arbitrability).

Exothermics' final argument is that the arbitration clause cannot apply to Counts I and II (relating to the provisional patent applications) because federal patent law does not allow for the arbitration of any claims except invalidity. This is a question of arbitrability and it, too, must be arbitrated. See Henry Schein, 586 U.S. at 69-70; Biller, 961 F.3d. at 509-10; Bossé, 992 F.3d at 27-28.

In short, the court's hands are tied. The parties must arbitrate the question of whether they must arbitrate. Because the language of the arbitration clause shows Exothermics and Ernst & Young delegated questions of arbitrability to the arbitrator, the court cannot consider Exothermics' arguments as to the arbitrability of the claims—no matter their merit.

## CONCLUSION

Ernst & Young's motion to compel arbitration (doc. no. 19) is granted. The case is stayed pending arbitration.

So ordered.

Landya McCafferty
United States District Judge

February 6, 2025

cc:    Counsel of Record